FILED _____ ENTERED
_____ LODGED _____ RECEIVED

NOV 2 5 2008

AT GREENBELT
CLERK U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY_____DEPUTY

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| DOROTHY WINSTON JACKSON | * | |
| Petitioner | * | |
| v. | * | Civil No. PJM 07-1326 |
| UNITED STATES OF AMERICA | * | Criminal No. PJM 02-0478 |
| Respondent | * | |

## MEMORANDUM OPINION

Pro se Petitioner Dorothy Winston Jackson ("Jackson")[1] has filed a Motion to Vacate, Set Aside or Otherwise Correct Sentence pursuant to 28 U.S.C. § 2255, which the Government opposes. For the reasons set forth below, the Court DENIES the Motion.

I.

On July 6, 2004, Jackson was convicted by jury of conspiracy to distribute and possess with intent to distribute Schedule II controlled substances Oxycodone and Oxycontin, in violation of 21 U.S.C. § 846 (Count 1); acquisition of Oxycodone and Oxycontin by forgery or fraud, in violation of 21 U.S.C. § 843(a)(3) (Counts 2, 4, 6, 8, 10, 12, and 14); and possession with intent to distribute Oxycodone and Oxycontin, in violation of 21 U.S.C. § 841 (Counts 3, 5, 7, 9, 11, 13, and 15). She was sentenced to 188 months of imprisonment on Count 1; 12 months consecutive as to Count 2; concurrent terms of 188 months of imprisonment on Counts 3, 5, 7, 9, 11, 13, and 15; and concurrent terms of 12 months as to Counts 4, 6, 8, 10, 12, and 14.

---

[1] Although Court records identify Petitioner as "Dorothy Marie Jackson," in her present motion she identifies herself as "Dorothy Winston Jackson."

1

Following her conviction, Jackson filed a Notice of Appeal to the United States Court of Appeals for the Fourth Circuit. That court affirmed this Court's decision, but remanded the case for resentencing in light of *United States v. Booker*, 543 U.S. 220 (2005). *See United States v. Jackson*, 170 Fed. Appx. 812 (4th Cir. 2006). On remand, this Court reduced Jackson's sentence to 144 months, followed by 3 years of supervised release. Jackson again appealed, alleging that the Court erred in its resentencing. The Fourth Circuit dismissed the appeal, noting that Jackson's 144 month prison term was two years below the advisory guidelines range. *See Jackson*, 216 F. Appx. 373.

Jackson returns to Court with her post-conviction Motion pursuant to 18 U.S.C. § 2255, alleging various instances of ineffective assistance of counsel.

II.

According to the evidence presented at trial, Jackson approached Cora Moran, who worked as a secretary for Dr. Cyrus Nemati, and asked her to provide blank prescription forms from Nemati's office. Moran agreed and in exchange was paid $30 per prescription. The jury heard testimony from a handwriting expert, Secret Service Agent Traci Moran ("Agent Moran")(unrelated to Cora Moran), who testified that Jackson filled out prescription cards herself and forged Nemati's signature. Nemati corroborated Agent Moran's testimony, and several witnesses familiar with Jackson's and Nemati's handwriting testified that the signatures appeared to have been forged by Jackson. Evidence also showed that Jackson sent people to Hrempt Pharmacy to have the fraudulent prescriptions filled for large quantities of Oxycodone and Oxycontin. For example, David Zubres, one of the Government's witnesses, testified that he filled fraudulent prescriptions for Jackson, and was paid for his work in prescription drugs instead

of cash.

In her Motion to Vacate, Jackson alleges her trial counsel was ineffective in several respects: he (1) refused to permit Jackson to speak to the prosecuting attorney in an effort to arrange a plea agreement; (2) failed to cross examine several witnesses; (3) prejudiced Jackson when he stated in an affidavit that Jackson's own expert confirmed the opinion of the Government's expert that the handwriting on the prescriptions was that of Jackson; and (4) failed to verify whether Jackson was competent to stand trial. She also contends that counsel failed to object to the Government's use of handwriting samples taken after she had had surgery for carpal tunnel syndrome, which rendered the samples unreliable, and also failed to object to the testimony of Agent Moran that the handwriting was "probably" Jackson's, which meant that the Government did not establish this "element" of the crime beyond a reasonable doubt.[2]

### III.

Claims of ineffective assistance of counsel are governed by the two-part test established in *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland* requires that an individual claiming ineffective assistance demonstrate (1) "that counsel's performance was deficient," and (2) "that the deficient performance prejudiced the defense." *Id.* at 687. Representation is deemed

---

[2] It is possible to read Jackson's contentions in this regard as complaints going to the merits of the evidence, i.e. that the testimony of Government handwriting expert Moran was insufficient to establish this "element" beyond a reasonable doubt and that the prosecution's use of Jackson's handwriting sample after she underwent surgery for carpal tunnel syndrome was unreliable and should have been excluded. Read in this way, however, the claims should have been reviewed on direct appeal and ordinarily would be considered waived unless Jackson could demonstrate cause-and-effect prejudice. *See U.S. v. Metzger*, 3 F.3d 756, 757 (4th Cir. 1993). But where, as here, the Government fails to raise the issue of waiver of appeal, the court may take that as a waiver of waiver. Even so, as the Court's discussion will show, substantively Jackson's claims still lack merit.

deficient if it "falls below an objective standard of reasonableness." *Id.* at 688. In other words, a defendant must demonstrate that his counsel's performance was not "within the range of competence demanded of attorneys in criminal cases." *Id.* at 687. Similarly, a showing of prejudice requires a defendant to demonstrate "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. The defendant bears the burden of demonstrating that she was indeed prejudiced by counsel's ineffective assistance. *See Fields v. Attorney General of the State of Md.*, 956 F.2d 1290, 1297 (4th Cir. 1992).

Courts are reluctant to second guess an attorney's strategic trial decisions when evaluating whether counsel's assistance was deficient. *See Goodson v. United States*, 564 F.2d 1071, 1072 (4th Cir. 1977). In particular, courts exercise deference when considering counsel's strategic decisions concerning what evidence to present at trial. *See Byram v. Ozmint*, 339 F.3d 203, 208 (4th Cir. 2003). Furthermore, there is a presumption that "counsel's conduct falls within the wide range of reasonable professional assistance." *Id* (quoting *Strickland,* 466 U.S. at 689).

IV.

The Court considers Jackson's ineffective assistance claims against this background.

A.

A defendant has no constitutional right to plea bargain with the prosecuting attorney in advance of trial. *See Weatherford v. Bursey*, 429 U.S. 545, 561 (1977). The decision to offer a plea bargain or meet with a defendant is entirely a matter of prosecutorial discretion. *See Id.* Moreover, Jackson's counsel has submitted a sworn affidavit asserting that on or about March 14, 2003 he

advised Jackson of the Government's willingness to offer her probation in return for cooperation

4

against her co-defendants. *See Hughes v. United States*, No. 1:05CV57, 2007 WL 841940, *4 (W.D. N.C. March 19, 2007), *aff'd. United States v. Hughes*, 242 Fed. Appx. 3 (4th Cir. 2007) (asserting "trial counsel's performance is within the range of competence if he informed the defendant of the charges, the plea offer, the range of sentence if convicted and the sentence under the plea offer"). Jackson has not suggested that she was prepared to cooperate in this or in any other respect. In addition, counsel has sworn under oath that he cannot recall at any time that Jackson requested to speak with the prosecuting attorney. Jackson has failed to demonstrate that she was denied effective assistance of counsel with respect to her supposed request to directly negotiate a plea with the prosecution.

B.

Jackson's argument that Conte's failure to cross-examine several witnesses amounts to ineffective assistance is also meritless. She asserts that counsel "didn't cross examine the witnesses and therefore their [sic] testimonies that were full of untruths were heard by the Jury and contributed to me being found guilty." The record indicates that counsel cross-examined five of the eleven witnesses called by the Government during its case-in-chief. His cross-examination of the two Government witnesses with the greatest potential bias and motive to lie, namely Cora Moran (who sold the stolen prescriptions to Jackson) and David Zubres (who had the forged prescriptions filled in exchange for prescription drugs) was extensive and vigorous. He especially probed Moran and Zubres regarding their own illegal conduct as well as the fact of their cooperation with the Government as creating an incentive to lie in order to avoid their own criminal liability. Finally, although counsel may have refrained from cross-examining certain other Government witnesses, e.g. experts and police officers, Jackson has failed to overcome the

presumption that this decision was part of a sound strategy. *See Michael v. United States*, 168 F. Supp. 2d 518 (4th Cir. 2001). Experts and police officers tend to have less incentive to lie because they have no personal stake in a case. Moreover, attacking the credibility of law enforcement officers, who are typically well-respected by lay jurors, carries the risk that it will backfire, to the detriment of the Defendant. In any case, Jackson has not indicated which witnesses she believes may have been untruthful, and how, if at all, counsel could have discredited their testimony through cross-examination.

C.

Jackson's claims regarding the Government's handwriting expert and her own handwriting samples fare no better. She makes two related claims. First, she asserts that Agent Moran's testimony that it was "probable" that the prescriptions were written by Jackson was insufficient to establish this element beyond a reasonable doubt. Second, she argues that the Government's handwriting sample was obtained after she underwent hand and elbow surgery, and was therefore unreliable. Taken as challenges to the effectiveness of counsel for not pursuing these arguments, even assuming counsel should have raised the arguments at trial, Jackson has not demonstrated any resulting prejudice, as required under *Strickland*. This is because the record otherwise amply supports the jury's finding of her guilt. Its decision was based on the record as a whole, which included testimony from Dr. Nemati and others that the prescriptions were forged by Jackson. In particular, counsel's failure to object to the Government's use of Jackson's post-surgery writing sample was well within the range of professional competence as outlined in *Strickland*, given his sworn statement that the defense's own handwriting expert believed that Jackson forged the prescriptions. Thus, not only was counsel not ineffective with respect to this testimony; taking

6

arguments about the testimony on the merits, Agent Moran's testimony and the handwriting samples did not affect the outcome of the case.

### D.

Jackson next claims that counsel prejudiced her when he stated in an affidavit that the defense's handwriting expert confirmed that the handwriting on the forged prescriptions matched Jackson's handwriting. This argument is also without merit. Counsel's affidavit was made long after his representation of Jackson ceased and came in direct response to her claim of ineffective assistance. Because counsel revealed such information only after Jackson was tried and sentenced, his statement could not have had an effect on the outcome of the proceeding.[3] Jackson has failed to demonstrate that the statement in any way prejudiced her defense as required by *Strickland*.

### E.

Finally, Jackson asserts that counsel was ineffective in failing to investigate her competency to stand trial. In particular, she alleges that she informed counsel that due to the influence of various prescription drugs she did not understand much of her trial. She claims that both the judge and jury should have been made aware of the prescription drugs she was taking. This claim is sharply contradicted by the record and is at odds with the law. First and foremost, counsel elicited direct testimony from Jackson's physician at trial regarding her medical condition

---

[3] As a member of the Maryland State Bar, counsel was bound by the Maryland Lawyers' Rules of Professional Conduct and Attorney Trust Accounts. Rule 1.6 governing Confidentiality of Information mandates that an attorney "may reveal information relating to the representation of a client" when responding "to allegations in any proceeding concerning the lawyer's representation of the client[.]" *See* Maryland Rule 1.6(b)(5). Thus, counsel was permitted to reveal such confidential information in light of Jackson's claims that he rendered her ineffective assistance.

and treatment. Further, Jackson's physician specifically testified that he prescribed Percocet to manage her pain from carpal tunnel syndrome. In other words, both the judge and jury were aware of Jackson's medications.

In any event, when evaluating whether a petitioner possesses the requisite competence to stand trial, courts consider whether the defendant "has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding- and whether he has a rational as well as a factual understanding of the proceedings against him." *Dusky v. United States*, 362 U.S. 402, 402 (1960). A petitioner raising a claim of incompetency is not entitled to a presumption of incompetency, and instead must establish her incompetency by a preponderance of the evidence. *See Burket v. Angelone*, 208 F.3d 172, 192 (4th Cir. 2000), *cert. denied*, 530 U.S. 1283 (2000). Similarly, "neither low intelligence, mental deficiency, nor bizarre, volatile, and irrational behavior can be equated with mental incompetence to stand trial." *Id.*

A review of the record leads ineluctably to the conclusion that Jackson's competency was never in doubt. She does not claim now, nor has she ever claimed, that she suffers from any mental illness. Furthermore, throughout the trial proceedings, she acted in a manner exhibiting full competence. She discussed with counsel, for example, whether she should testify during the defense's case-in-chief. Additionally, when she indicated to counsel that she chose not to testify, the Court itself conducted an extensive voir dire and was satisfied that she was waiving knowingly and voluntarily her right to testify. *See* Transcript of Record at 476-79, *United States v. Jackson*, No. 02-cr-0478 (No. 156).

Only on very rare occasions has the Fourth Circuit found an attorney's representation ineffective for failure to investigate his client's competence. *See Becton v. Barnett*, 920 F.2d

1190 (4th Cir. 1990) (finding that when the defendant was a diagnosed schizophrenic, was hospitalized for mental illness on several occasions, and requested a psychiatric evaluation, counsel was ineffective in failing to make a "reasonable investigation" to determine his client's competency to stand trial); *see also Wood v. Zahradnick*, 430 F. Supp. 107, 109-110 (E.D. Va. 1977) (reasoning that when defendant had no recollection of raping and beating his 67-year-old neighbor, and counsel recognized that "defendant's mind [did] not seem to be completely clear," counsel should have pursued potential defenses relating to his mental state).

The instant case, quite simply, does not rise to these standards.

V.

For the foregoing reasons, the court DENIES Jackson's Motion to Vacate, Set Aside or Correct Sentence. [Paper No. 298].

A separate Order will ISSUE.

/s/
_____
PETER J. MESSITTE
UNITED STATES DISTRICT JUDGE

November 20, 2008